UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANCY HAGAN,

       Plaintiff,

v.                      CASE No.  8:14-CV-393-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

       The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

_____

      [1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

I.

The plaintiff, who was forty-seven years old at the time of the administrative hearing and who has a general equivalency diploma, has worked as a delivery driver, order processor, and sewing inspector (Tr. 22, 62, 199). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to depression, anxiety, panic attacks, chronic back pain, arthritis in her back, thyroid problems, and fibrocystic disease (Tr. 231). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, and major depressive disorder with anxiety features (Tr. 14). In light of those impairments, the law judge determined (Tr. 19):

> [T]he claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), such that the claimant is able to lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently, stand and/or walk for about 4 hours, sit for about 6 hours, in an 8-hour workday, with

normal breaks. The claimant must be allowed to sit for 30 minutes after standing and/or walking for 30 continuous minutes. Claimant cannot operate repetitive foot controls. Claimant must never climb ladders, ropes and scaffolds, but she can occasionally climb stairs or ramps, crouch, balance, crawl, kneel or stoop. Claimant must avoid concentrated exposure to extreme cold and extreme heat, avoid concentrated exposure to vibrations, and must avoid even moderate use of hazardous machinery and unprotected heights. Claimant retains an[] ability to understand, remember and carry out simple and routine instructions/tasks with no more than occasional, superficial interaction with the general public and no more than occasional interaction with coworkers.

The law judge concluded that, with these limitations, the plaintiff was unable to perform any past relevant work (Tr. 22). However, based on the testimony of a vocational expert, the law judge determined that the plaintiff could perform other jobs that exist in significant numbers in the national economy, such as office helper, mail clerk, and copy machine operator (Tr. 23). Accordingly, he decided that the plaintiff was not disabled (Tr. 24). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert.

denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff argues that the law judge "improperly rejected the treating physicians' opinions about restrictions and limitations caused by plaintiff's mental conditions" (Doc. 16, p. 8).  Specifically, the plaintiff argues that the law judge did not properly consider the opinions of psychiatrist, Dr. David Panting, and clinical psychologist, Richard Belsham (id., p. 9).  This argument is unmeritorious because the law judge stated good cause for discounting these opinions.

Dr. Panting began treating the plaintiff in March 2012 (see Tr. 459).  On May 7, 2013, several months after his last appointment with the plaintiff, Dr. Panting completed a Mental Impairment Questionnaire ("Questionnaire") in which he opined that the plaintiff was essentially disabled (Tr. 522-26).  Specifically, Dr. Panting opined that the plaintiff had "marked" restriction of activities of daily living; "extreme" difficulties in maintaining social functioning; and "extreme" deficiencies of concentration, persistence or pace (Tr. 524).  He anticipated that the plaintiff would be absent from work more than four days per month due to her impairments (Tr. 525).  Moreover, Dr. Panting opined that the plaintiff has a "[c]urrent history

of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement" and indicated that she has a "[c]omplete inability to function independently outside the area of [her] home" (id.).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge acknowledged Dr. Panting's opinion in the Questionnaire that the plaintiff had extreme mental functional limitations, as well as Dr. Panting's progress notes spanning two calendar years (Tr. 16, 17). The law judge gave Dr. Panting's progress notes "significant weight," but he declined to give Dr. Panting's opinion of functional limitations in the Questionnaire controlling weight (Tr. 17). In this regard, the law judge explained (id.):

A physician's opinion or conclusion is given controlling weight in the presence of supporting evidence such as clinical or laboratory findings or other medically acceptable evidence. I find that the conclus[o]ry opinion of Dr. Panting to be unpersuasive because it is inconsistent with his progress findings and inconsistent with the objective and clinical medical evidence of record. Dr. Panting's progress notes ... are therefore given significant weight, but not his unsupported medical source statement opinion of May 7, 2013.

The law judge elaborated on that determination (Tr. 16-17) (emphasis in original):

The psychiatric treatment record provided by Dr. Panting for the period 2012 through 2013 indicates that, with prescribed treatment, claimant functioned fairly well with only mild to moderate limitations (GAF 63-65)(exhibits 9F and 11F). In a medical source statement dated May 7, 2013, Dr. Panting confirmed symptoms associated with severe anxiety and depression, along with prescribed treatment with Abilify and Xanax. Further, Dr. Panting added that, with prescribed treatment, claimant was functioning at GAF level 55-60 *for the past year*, a level consistent with only moderate difficulty with social and occupational functioning. However, curiously, in the same report, Dr. Panting concluded that claimant demonstrated "marked" or "extreme" limitations in performing activities of daily living, maintaining appropriate social functioning, and maintaining concentration, and also demonstrated "repeated" episodes of

> decompensation (exhibit 16F). I note that this last statement of Dr. Panting's is not only wholly inconsistent with a conclusion of functioning at GAF level 55-60 for the past year, but is also wholly inconsistent with the routine visits documented in the progress notes which indicate only mild to moderate limitations (GAF 63-65).

Furthermore, the law judge specified that, contrary to Dr. Panting's opinion of marked restrictions of activities of daily living (Tr. 15),

> the claimant reported ... she performs all personal grooming tasks independently. She spends her day watching television, performing light housecleaning, preparing light meals, doing laundry, and going shopping approximately twice a week. She speaks to her sister by phone every day, and occasionally goes to bingo or goes fishing. She stated that she handles her own financial accounts and pays bills, without problem, but sometimes makes mistakes. She stated that she drives a car to go shopping or perform other errands (exhibit 10E). The claimant essentially testified to the same activities at her hearing. Consequently, there is no evidence that claimant demonstrates significant limitations in performing activities of daily living.

See also Tr. 68 (plaintiff also uses the computer for email and surfing the net).

Additionally, the law judge stated with regard to the plaintiff's social functioning (Tr. 15-16):

Claimant's treating psychiatrist David Panting, M.D., indicated in a mental impairment questionnaire that claimant demonstrates social agoraphobia to an "extreme" degree (exhibit 16F). However, in the same report, Dr. Panting assessed claimant's functioning to be at level 55-60 on the Global Assessment of Functioning (GAF) Scale – a level consistent with only moderate impairment in social and occupational settings. Moreover, Dr. Panting's actual progress notes throughout 2012 and 2013 diagnose only "moderately["] severe depression/anxiety, and indicate GAF functioning scores of 63-65, or a level indicative of only mild to moderate symptoms (exhibits 9F and 11F). There is no evidence that claimant demonstrates difficulty getting along with others or shuns social contact.  Further claimant testified to leaving the house 2-3 times per week to shop, and occasionally goes to play Bingo.  These activities, in and of themself, fails to support a finding of agoraphobia, or a social impairment of more than moderate limitations.

Moreover, the law judge found that, contrary to Dr. Panting's opinion in the Questionnaire, Dr. Panting's 2012 and 2013 progress notes indicate that claimant demonstrates, at worst, moderate difficulties in concentration, persistence, or pace; and that the plaintiff's activities "demonstrate[] at least an adequate ability to maintain concentration to perform routine and non-complex tasks" (Tr. 16).

This explanation clearly provides good cause for not giving controlling weight to Dr. Panting's opinion in the Questionnaire that the plaintiff is essentially mentally incapacitated. See Lewis v. Callahan, supra. Significantly, as the law judge also pointed out, Dr. Panting's opinion is conclusory (Tr. 17). Thus, it consists primarily of checkmarks on a form without any meaningful explanation for the extreme assessments (see Tr. 524-26). Notably, the conclusory nature of the Questionnaire is, in itself, a recognized basis for discounting a treating physician's opinion. See Lewis v. Callahan, supra; Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (the law judge stated good cause to not give controlling weight to the treating physician's opinions stated in forms which did not adequately explain his opinions).

The plaintiff argues that, in discounting Dr. Panting's opinion, the law judge improperly relied on the plaintiff's GAF scores (Doc. 16, p. 13). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic

and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.

The plaintiff argues that the law judge concluded that Dr. Panting's treatment notes contained only "mild to moderate limitations" based upon the plaintiff's GAF score of 63-65, and that it was improper to rely upon that GAF score because it was given during the plaintiff's first month of treatment (Doc. 16, p. 13). However, the law judge clearly did not base his conclusion that the treatment notes contained only "mild to moderate limitations" upon the GAF score, as a GAF score of 63-65 reflects only "mild" mental symptoms. See DSM-IV-TR, p. 34, supra. In other words, the law judge found that the plaintiff's condition included moderate limitations, even though such limitations would not be established by a GAF of 63-65. Furthermore, the law judge distinctly indicates that Dr. Panting's progress notes demonstrate, at worst, "moderate" difficulties (Tr. 16). Therefore, it is clear that the law judge's determination that Dr. Panting's progress notes contain "mild to moderate limitations" refers to both the GAF score and Dr. Panting's substantive notations. In all events, the law judge clearly did not rely on the GAF score of 63-65 in assessing the plaintiff's residual functional

capacity because the law judge assessed functional limitations that correspond with moderate mental symptoms (Tr. 19). Therefore, this argument is meritless.

The plaintiff also argues that the law judge should not have considered her GAF scores because the Social Security Administration does not endorse the GAF scale, and the GAF scale does not have a "direct correlation" to the severity requirements in mental disorders listings (Doc. 16, p. 13). In the first place, the law judge was considering the GAF scores assigned by Dr. Panting in deciding whether Dr. Panting's opinion was reasonable. It was clearly proper for the law judge to assess the validity of the opinion in light of the inconsistent GAF scores Dr. Panting himself had assigned.

Moreover, the plaintiff does not identify any legal authority stating that the law judge is precluded from considering GAF scores, along with other record evidence, to assess mental functioning limitations. To the contrary, the Eleventh Circuit has affirmed consideration of GAF scores, along with other evidence of non-disabling mental symptoms, to support the rejection of a treating physician's opinion of mental disability. <u>Gilabert</u> v.

Commissioner of Social Security, 396 Fed. Appx. 652, 654 (11th Cir. 2010);

Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 873-74 (11th

Cir. 2011).

Furthermore, the record shows that, in this case, the law judge

did not give undue weight to the GAF scores.   Thus, the law judge

acknowledged at the administrative hearing that GAF scores are not

dispositive of a claimant's mental functioning.   In this regard, the following

exchange took place between the law judge and the plaintiff's representative

(Tr. 39-40):

> Atty: I guess my position, Your Honor, would be
> that, first of all, we can't rely strictly on GAF
> scores anymore, according to –
>
> ALJ: Right.  Of course, well, sure.
>
> Atty: –according to regs and instructions.
>
> ALJ: Yes, yes, yes.  Just – it's just a piece of the
> puzzle.

Additionally, the law judge's decision shows that the law judge did not

unduly rely on the GAF scores in determining the plaintiff's mental

functioning.  Thus, in rejecting Dr. Panting's opinion of extreme functional

limitations, the law judge referenced no less than four times Dr. Panting's

treatment records (which, except for Dr. Panting's first appointment, do not

contain GAF scores) that reflect only mild to moderate mental symptoms (Tr.

15, 16, 17).   Specifically, those treatment records show that, despite an

anxious or depressed mood, the plaintiff was oriented x3, she had no thought

abnormalities or psychosis, she exhibited good judgment and insight, and did

not have suicidal ideations (see Tr. 464, 465, 473, 475, 483).   See 20 C.F.R.

404.1527(c)(3), 416.927(c)(3) (an opinion supported by medical signs is

given greater weight).   Further, Dr. Panting's progress notes indicate that,

overall, the plaintiff was responding well to medication treatment and her

mood was better (see Tr. 473, 474, 475).[2]

---

[2]The plaintiff also argues that the law judge's decision was somehow deficient
because it did not include "specific references to Dr. Panting's clinical findings" (Doc. 16,
p. 13). This argument is meritless. Thus, the law judge accurately summarized that those
records show, overall, mild to moderate mental limitations (Tr. 15, 16, 17). Further
specificity is not required, as "there is no rigid requirement that the ALJ specifically refer
to every piece of evidence in his decision." See Dyer v. Barnhart, 395 F.3d 1206, 1211
(11th Cir. 2005).

The plaintiff argues further that Dr. Panting's progress notes of January 28, 2013,
support her contention of mental disability, as it reflects a depressed mood and that she has
some "bad days." However, that progress note also shows that the plaintiff was oriented
x3, alert, goal directed, had logical thought processes, good judgment and insight, and good
memory (Tr. 483). Furthermore, it is insufficient to merely identify evidence that could
support a finding of disability; rather, the plaintiff must identify evidence that compelled
the law judge to find disability because the law judge's resolution of conflicting evidence
is entitled to deference. See Adefemi v. Ashcroft, supra; see also Lawton v. Commissioner

Moreover, as quoted supra, pp. 9-10, the law judge focused upon

the plaintiff's activities of daily living which are patently inconsistent with

Dr. Panting's opinion of total mental disability.  For example, the law judge

noted that the plaintiff's shopping trips and going out to play Bingo "in and

of themself [sic] fails to support a finding of agoraphobia, or a social

impairment of more than moderate limitations" (Tr. 16).  The law judge also

noted that the plaintiff's independent performance of her personal grooming,

meal preparation, light housework, driving and shopping show that the

plaintiff is not significantly limited in performing activities of daily living

(Tr. 15).  Consequently, the plaintiff's argument that the law judge overly

relied upon the plaintiff's GAF scores is meritless.

In sum, the plaintiff has not shown that the law judge erred in

discounting the weight he gave to Dr. Panting's opinion of functional

limitations expressed in the Questionnaire.  Notably, the law judge did not

totally reject Dr. Panting's opinions, as he assigned "significant weight" to

---

of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does
contain some evidence that is contrary to the ALJ's determination, we are not permitted to
reweigh the importance attributed to the medical evidence."). The plaintiff's reference to
this progress note clearly does not meet that threshold.

Dr. Panting's treatment notes (Tr. 17) and, accordingly, assigned substantial mental limitations which restrict the plaintiff to work involving "simple and routine instructions/tasks with no more than occasional, superficial interaction with the general public and no more than occasional interaction with coworkers" (Tr. 19).

Next, the plaintiff argues that the law judge erred in discounting psychologist Dr. Richard Belsham's opinion of her functional limitations (Doc. 16, pp. 14-16). Dr. Belsham began treating the plaintiff in November 2012 (see Tr. 519). In a Mental Impairment Questionnaire ("Questionnaire") dated April 28, 2013, Dr. Belsham essentially opined that the plaintiff was mentally disabled (Tr. 511-15).

Thus, Dr. Belsham placed (confusingly) checkmarks for both "marked" and "extreme" limitations concerning the plaintiff's activities of daily living and in maintaining social functioning (Tr. 513). Dr. Belsham also opined that she had "marked" deficiencies of concentration, persistence or pace (id.). He anticipated that the plaintiff would be absent from work more than four days per month due to her impairments (Tr. 514). Moreover, Dr. Belsham opined that the plaintiff has a "Current history of 1 or more years'

inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement" (id.).

The law judge acknowledged Dr. Belsham's opinion in the Questionnaire that the plaintiff is mentally disabled (Tr. 17). However, he discounted that opinion (id.):

> In November 2012, Dr. Panting referred claimant to psychologist Richard Belsham, Ph.D. for evaluation. Claimant visited with Dr. Belsham until April 2013. Dr. Belsham's entire treatment record is a record of claimant's subjective complaints, without any evidence of mental status evaluation. Consequently, on April 28, 2013, Dr. Belsham completed a medical source statement in which he formally diagnosed panic disorder with "moderate agoraphobia" and major depressive disorder, and assessed the past year's functioning to be at GAF level 50—or serious impairment in social and occupational settings. To confuse matters more, Dr. Belsham added that claimant demonstrated not serious, but "marked" or "extreme" limitations in performing activities of daily living, maintaining appropriate social functioning, and maintaining concentration, and "repeated" episodes of decompensation (exhibit 14F and 15F).
>
> It should be noted that psychologists have at their disposal a multitude of diagnostic tests that provide objective insight as to the scope and severity of a claimant's alleged depression, anxiety, memory

> impairment, concentration loss, or social impairment. ... There is no evidence that consultative psychologist Dr. Belsham administered any of these ... diagnostics. Consequently, it must be concluded that Dr. Belsham made conclusions based entirely upon claimant's subjective reports, rather than objective mental status evaluation. Dr. Belsham's opinion is therefore given little weight.

This explanation provides good cause for discounting Dr. Belsham's opinion.

See Lewis v. Callahan, supra. Furthermore, it is noted that Dr. Belsham

completed the same Questionnaire as Dr. Panting, and Dr. Belsham's opinion

of mental functional limitations is similarly conclusory. See Id.; Johns v.

Bowen, supra; Lanier v. Commissioner of Social Security, supra, 252 Fed.

Appx. at 314 (noting that an opinion may be discounted on the basis that it is

impermissibly conclusory).

The plaintiff argues that the law judge's decision must be

reversed because the law judge stated incorrectly that Dr. Belsham's progress

notes did not contain mental status evaluations (Doc. 16, p. 15). The plaintiff

is correct that this was a misstatement by the law judge. However, remand is

not warranted on this basis because it is a harmless error, as there is no reason

to think that the law judge would have otherwise accepted Dr. Belsham's

opinion of extreme mental functional limitations. See Williams v. Barnhart, 140 Fed. Appx. 932, 937 (11ᵗʰ Cir. 2005) (harmless error when the plaintiff failed to show that an omission from a hypothetical would have changed the testimony of the vocational expert); Graham v. Apfel, 129 F.3d 1420, 1423 (11ᵗʰ Cir. 1997); Diorio v. Heckler, 721 F.2d 726, 728 (11ᵗʰ Cir.1983) (when an incorrect application of the regulations results in harmless error because the correct application would not contradict the law judge's ultimate findings, the law judge's decision will stand).

Thus, this is not a circumstance where Dr. Belsham's mental status evaluations supported Dr. Belsham's opinion of extreme mental functional limitations. Rather, Dr. Belsham's mental status evaluations show that, despite an anxious and depressed mood, the plaintiff's thought content was relevant and organized, perceptions were normal, she had a full affect, no suicidal ideations, and her overall functioning was fair (Tr. 516, 517, 518).[3]   Consequently, Dr. Belsham's mental status evaluations actually

---

[3]Dr. Belsham's progress notes also indicate life circumstances that were negatively affecting the plaintiff's mental state. See Tr. 516, 517 (noting that the plaintiff had "losses last couple of y[ea]rs" and that she had to move in with her son, apparently due to financial difficulties).

support the law judge's conclusion that Dr. Belsham's opinion of extreme functional limitations is based on subjective complaints rather than objective evidence.

Notably, moreover, Dr. Belsham's and Dr. Panting's similar assessments of the plaintiff's mental status each reflect that, despite a depressed and/or anxious mood, other aspects of the plaintiff's mental functioning were normal, and the law judge found that Dr. Panting's progress notes did not show disabling functional limitations (Tr. 16).[4] Consequently, there is no reason to think that the law judge would have found that Dr. Belsham's assessments of the plaintiff's mental status support disabling limitations.

Furthermore, the law judge gave other reasons, which are supported by substantial evidence, for discounting Dr. Belsham's opinion of disabling mental functioning limitations. Thus, the law judge notes other assessments by Dr. Belsham do not indicate disabling mental limitations, and

---

[4]Furthermore, the record reflects that other physicians found the plaintiff's mental status was normal. See Tr. 508 (On November 9, 2012, Dr. Robert Ycaza assessed the plaintiff as "Alert and oriented x3.... Attention span is good. The patient appears calm."); Tr. 505 (On November 29, 2012, Dr. Ycaza noted that the plaintiff was alert, oriented x3, with a good attention span); Tr. 527 (On March 1, 2013, Dr. Raymond Raitz assessed the plaintiff as oriented x3, alert, cooperative and not in acute distress).

that the record does not reflect that Dr. Belsham administered any diagnostic testing to support his opinion of extreme functional limitations (see Tr. 17). Moreover, the decision discusses in detail the plaintiff's activities of daily living that are inconsistent with Dr. Belsham's opinion that the plaintiff has marked or extreme limitations in activities of daily living, social functioning, and concentration (Tr. 15, 16, 18, 22).  Those daily activities, in fact, render incredible Dr. Belsham's, as well as Dr. Panting's, opinion that there is a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement" (Tr. 514).  Those implausible opinions provide a valid basis for discounting Dr. Belsham's (and Dr. Panting's) opinions.  Consequently, the law judge reasonably stated that the evidence of the plaintiff's daily activities, alone, shows that she has no greater than moderate limitations in social functioning.

In sum, there is no reason to think that, but for the law judge's misstatement regarding Dr. Belsham's mental status evaluations, the law judge would have accepted Dr. Belsham's opinion of extreme mental functioning limitations, or that greater weight would have been given to that

opinion.  Therefore, that error is harmless and does not warrant remand.  <u>See</u> <u>Williams</u> v. <u>Barnhart</u>, <u>supra</u>; <u>Diorio</u> v. <u>Heckler</u>, <u>supra</u>.

Finally, the plaintiff argues that the law judge should not have found confusing Dr. Belsham's use of "marked" and "extreme" to describe the plaintiff's limitations because they are appropriate terms to describe the severity of a mental impairment (Doc. 16, pp. 15-16).   The plaintiff misconstrues the law judge's point.  Thus, the law judge is not questioning the terms themselves, but their applicability to the plaintiff's functioning (<u>see</u> Tr. 17).  In this regard, the law judge indicates that he finds confusing Dr. Belsham's opinion of marked and extreme functional limitations in light of Dr. Belsham's less severe assessments in his treatment notes of the plaintiff (<u>id</u>.).  It is also noted that Dr. Belsham's checkmarks beside two distinct levels of severity of limitations is confusing, as the Questionnaire intends for the medical provider to select one term, not two, to describe the patient's functioning for each area.  Therefore, this argument is unavailing as well.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**.

The Clerk is directed to enter judgment accordingly and to **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _11th_ day of March, 2015.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE